UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.M., A-240-170-123 | No.  1:25-cv-1607 TLN AC |
| Petitioner, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| WARDEN OF THE GOLDEN STATE ANNEX ICE DETENTION FACILITY, et al., | |
| Respondents. | |

Petitioner, an immigration detainee proceeding through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Currently before the court is petitioner's petition for writ of habeas corpus (ECF No. 1), which respondents oppose (ECF No. 14).

I.      Factual and Procedural Background

Petitioner, a nonbinary citizen of India, arrived at the San Francisco International Airport on a valid non-immigrant visa on April 4, 2025.  ECF No. 1 at 5; ECF No. 14-2 at 2; ECF No. 15 at 5.  Respondents assert that during inspection, petitioner informed Customs and Border Patrol ("CBP") that they intended to engage in unauthorized employment while in the United States and affirmed the statement under oath.  ECF No. 14-2 at 3.  CBP then canceled their visa and placed them into expedited removal under 8 U.S.C. § 1225(b)(1).  Id.; ECF No. 14-3.  Petitioner later expressed fear of being returned to India and had a credible fear hearing, at which petitioner was

1

found to possess a credible fear of persecution.  ECF No. 15 at 5.  They were then placed in standard removal proceedings under 8 U.S.C. § 1229a.  ECF No. 14 at 2-3; ECF No. 15 at 5.  On August 14, 2025, petitioner applied for asylum and withholding of removal.  ECF No. 15 at 6.  Petitioner is being detained under 8 U.S.C. § 1225(b)(1) and has remained in custody since their arrival.  ECF No. 1 at 5; ECF No. 14 at 1; ECF No. 15 at 5-6.

While detained, petitioner has requested and been denied bond, being deemed statutorily ineligible, and they have been told that "they are not giving any parole to anybody."  ECF No. 1 at 7; ECF No. 14 at 6; ECF No. 15 at 16, 20.  While awaiting asylum adjudication, petitioner has had at least five master calendar hearings in front of three different judges,[1] and their merits hearing has been rescheduled at least twice,[2] only once at petitioner's request so that pro bono counsel could properly prepare.  ECF No. 1 at 9; ECF No. 15 at 7.

On November 21, 2025, petitioner filed a pro se petition arguing that their continued, indeterminate detention without a bond hearing violates their Fifth Amendment right to due process.  ECF No. 1.  Petitioner requests relief in the form of a bond hearing, either by this court or the immigration court.  Id. at 18-19.  Respondent filed a motion to dismiss, arguing that because petitioner is an immigrant "seeking admission" without valid entry documents who has been placed in expedited removal, they are subject to mandatory detention under § 1225(b)(1) and not entitled to any process.  ECF No. 14 at 3-5.  Respondents also argue that petitioner's due process rights have not been violated.[3]  Id. at 6-10.  Petitioner, through appointed counsel, filed a

---

[1]  On at least two occasions, the immigration judge assigned to petitioner's case was fired by respondent.  ECF No. 15 at 7.

[2]  At the time of briefing, petitioner was set for a merits hearing on February 19, 2026.  ECF No. 14 at 3; ECF No. 15 at 7.  However, the EOIR's website now reflects that petitioner's hearing is scheduled for April 21, 2026, before yet another judge.

[3]  As part of their opposition, respondents argue that petitioner has not exhausted administrative remedies in the immigration system because they have not appealed their bond determination to the Board of Immigration Appeals ("BIA").  ECF No. 14 at 5-6.  Yet respondents also argue that petitioner's detention is "statutorily-compelled" and that petitioner is statutorily "ineligible for a bond."  Id. at 6-7.  As petitioner points out, respondents "argue both that Petitioner is not eligible for release through the immigration process and that Petitioner should seek release through the immigration process."  ECF No. 15 at 20-21.  It would be unreasonable for the court to require petitioner to pursue what respondents' own arguments indicate is a futile appeal to the BIA, and (continued)

traverse in which they acknowledge that they are detained under § 1225(b)(1), but argue that under the Due Process Clause they have "the right to be free from prolonged detention without any opportunity to seek release from a judge."  ECF No. 15 at 12-20.

II.    Legal Standards

A.    Standards for Habeas Corpus

A writ of habeas corpus may be granted to anyone who is held in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2241(c)(3); Magana-Pizano v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'" (citations omitted)).  In federal habeas proceedings, the petitioner is required to prove their case by a preponderance of the evidence. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

B.    Constitutional Standards

The Due Process Clause protects persons in the United States from being "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas v. Davis, 533 U.S. 678, 693 (2001) (citations omitted).  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Id. at 690.

"The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process."  United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (citation omitted).  The substantive component of the Due Process Clause "forbids the government to infringe certain 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a

the undersigned finds exhaustion in this case is waived.  See Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (exhaustion can be waived where "pursuit of administrative remedies would be a futile gesture." (quoting SEC v. G.C. George Sec., Inc., 637 F.2d 685, 688 (9th Cir. 1981))).

compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993) (citations omitted). Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (internal citations omitted); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

"An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted), as amended on denial of reh'g (July 29, 1998).

### C.     Statutory Immigration Framework

"[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." Jennings v. Rodriguez, 583 U.S. 281, 287 (2018). Both categories are subject to mandatory detention until a certain point or until certain proceedings have concluded. Id. "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" as well as "certain other aliens designated by the Attorney General in his discretion." Id. (citing 8 U.S.C. § 1225(b)(1)(A)(i), (iii)).

If a noncitizen subject to § 1225(b)(1) "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the [noncitizen] for an interview by an asylum officer." 8 U.S.C. § 1225(b)(1)(A)(i)-(ii). If, after conducting a credible fear interview, the asylum officer determines that the noncitizen has a credible fear of persecution, the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(i)-(ii). Where there is a positive credible fear determination, the United States Citizenship and Immigration Services (USCIS) has discretion to "issue a Form I-862, Notice to Appear, for full consideration of the asylum and withholding of removal claim in proceedings under [8 U.S.C. § 1229a]." 8 C.F.R. § 208.30(f).

4

Despite the statute's mandatory detention provision, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." Jennings, 583 U.S. at 288 (citing 8 U.S.C. § 1182(d)(5), 8 C.F.R. §§ 212.5(b), 235.3 (2017)).  The "express exception to detention" under 8 U.S.C. § 1182(d)(5) "implies that there are no other circumstances under which [noncitizens] detained under § 1225(b) may be released."  Id. at 300.  Accordingly, there is no statutory right to a bond hearing for noncitizens detained under § 1225(b).  Id. at 296-97.

III.    Discussion

A.    Protected Liberty Interest

It has long been established that noncitizens in the United States have constitutional due process protections, Wong Wing v. United States, 163 U.S. 228, 238 (1896), and those protections apply regardless of whether they are "seeking admission" or are "admitted," Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537, 549 n.4 (2007).  While "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," Demore v. Kim, 538 U.S. 510, 523 (2003) (quoting Flores, 507 U.S. at 306), the Supreme Court nonetheless upheld 8 U.S.C. § 1226(c)'s mandatory detention provision as constitutionally valid on its face, id. at 531.  However, the Supreme Court did so with the understanding that detention under § 1226(c) constitutes a "very limited time" that "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the alien chooses to appeal."  Demore, 538 U.S. at 513, 529-30 & n.12.  Then, in Jennings, the Supreme Court held that § 1225(b) and § 1226(c) did not require periodic bond hearings and remanded the case without addressing the due process claims.[4]  Jennings, 583 U.S. at 312.

But neither Demore nor Jennings forecloses an as-applied challenge to mandatory detention under § 1225(b).  See Jennings, 583 U.S. at 312 (court did not address constitutional

---

[4]  The respondents in Jennings had argued that 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c) "do not authorize 'prolonged' detention in the absence of an individualized bond hearing" and that absent a bond-hearing requirement, the statutes violated due process.  Jennings, 583 U.S. at 291.

arguments because they were not considered below); Nielsen v. Preap, 586 U.S. 392, 420 (2019) (as-applied challenge to § 1226(c) not foreclosed).  Moreover, the Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so," Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018), and the district courts have continued to find that "unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process," Banda v. McAleenan, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019); see Leke v. Hott, 521 F. Supp. 3d 597, 603 & n.8 (E.D. Va. 2021) ("there is no persuasive argument that Petitioner's prolonged detention [of over two years] without a bond hearing comports with the Fifth Amendment or the ordinary operation of the INA") (collecting cases); Abdul-Samed v. Warden of the Golden State Annex Det. Facility, No. 1:25-cv-0098 SAB, 2025 WL 2099343, at *6, 2025 U.S. Dist. LEXIS 142973, at *16 (E.D. Cal. July 25, 2025) ("[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" (quoting Martinez v. Clark, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6, 2019 U.S. Dist. LEXIS 197895, at *17 (W.D. Wash. May 23, 2019))).

Petitioner has been continuously detained since their arrival at the San Francisco International Airport on April 4, 2025, and because petitioner expressed credible fear of return to their home country, they are no longer in expedited removal proceedings.  ECF No. 1 at 5; ECF No. 14 at 2-3; ECF No. 15 at 5.  While respondents argue that "petitioner has made no showing that their detention is indefinite" and assert petitioner is responsible for delays in their proceedings because they have chosen to contest their removal and sought continuances for more time to obtain evidence (ECF No. 14 at 8-9), the facts of this case suggest otherwise.

The record indicates that petitioner has requested only one continuance, and that the request was made after pro bono counsel appeared on their behalf and the extension was for the purpose of allowing counsel time to properly prepare.  ECF No. 1 at 9; ECF No. 15 at 7.  Aside from petitioner's single request for continuance, the remaining "delays" cited by respondents

appear to be due to the administrative process and petitioner's exercise of their rights within that process.  Contrary to respondents' implication, "Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to [their] removal cannot undermine [their] claim that detention has become unreasonable."  Liban M.J. v. Sec'y of Dep't of Homeland Sec., 367 F. Supp. 3d 959, 965 (D. Minn. 2019) (citation omitted); Masood v. Barr, No. 19-cv-7623 JD, 2020 WL 95633, at *3, 2020 U.S. Dist. LEXIS 4809, at *9 (N.D. Cal. Jan. 8, 2020) ("[I]t ill suits the United States to suggest that he could shorten his detention by giving up these rights and abandoning his asylum application.").  Moreover, petitioner asserts, and respondents do not contest, that at least two immigration judges to whom petitioner's case was assigned were fired, further delaying proceedings.  ECF No. 15 at 7.  "[T]he delay caused by immigration judge assignments 'is attributable to the Government, not [petitioners].'"  Malyshko v. Warden, Otay Mesa Det. Ctr., No. 3:26-cv-0069 RBM SBC, 2026 WL 252367, at *5, 2026 U.S. Dist. LEXIS 19115, at *13 (S.D. Cal. Jan. 30, 2026) (quoting Banda, 385 F. Supp. 3d at 1120).  As it currently stands, there is no clear end to petitioner's immigration proceedings in sight, even assuming their currently scheduled hearing goes forward.[5]  See Mohammed v. Warden of Cal. City Det. Ctr., No. 1:26-cv-0118 DJC CSK, 2026 WL 192368, at *3, 2026 U.S. Dist. LEXIS 13886, at *6 (E.D. Cal. Jan. 26, 2026) (due to petitioner's asylum claim "his case will first be heard by an Immigration Judge, then by the Board of Immigration Appeals, followed by the Ninth Circuit provided either party seeks further review").

Taking these factors into consideration, the undersigned finds that petitioner's detention is prolonged and indefinite and they have therefore demonstrated a protected liberty interest.

////

---

[5]  According to the American Immigration Council's website, "[i]ndividuals with an immigration court case who were ultimately granted relief such as asylum in FY 2024 waited more than 1,283 days on average for that outcome."  Asylum in the United States, Am. Immigr. Council (May 9, 2025), https://www.americanimmigrationcouncil.org/fact-sheet/asylum-united-states/ [https://perma.cc/84D3-UWJS]; see also Immigration Court Quick Facts, Transactional Recs. Access Clearinghouse, https://tracreports.org/immigration/quickfacts/eoir.html [https://perma.cc/QU2N-4TWN]  (showing that as of the end of February 2026 there were 3,318,099 active cases before the immigration court, 2,322,671 of which were awaiting asylum hearings).

B.      Process Due

Having determined that a liberty interest exists, the court must now examine what process is due.  See Thompson, 490 U.S. at 460 (the court "first asks whether there exists a liberty or property interest which has been interfered with" and then "examines whether the procedures attendant upon that deprivation were constitutionally sufficient").  Petitioner argues that their detention has become prolonged such that they are entitled to a bond hearing under several alternative tests: (1) the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319, 335 (1976); (2) the six-factor test set forth in Banda v. McAleenan, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019); and (3) the six-month benchmark.  ECF No. 15 at 13-20.  The court applies the framework set forth in Mathews, and concludes for the reasons set forth below, that a prompt bond hearing at which the government will bear the burden demonstrating continued detention is warranted is necessary.  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (assuming without deciding that the Mathews standard applies to a due process challenge to a non-citizen's ongoing detention); A.E. v. Andrews, No. 1:25-cv-0107 KES SKO, 2025 WL 1424382, at *4, 2025 U.S. Dist. LEXIS 94233, at *10 (E.D. Cal. May 16, 2025) (noting most district courts in the Ninth Circuit employed Mathews to evaluate entitlement to a bond hearing), adopted by 2025 WL 1808676, 2025 U.S. Dist. LEXIS 125244 (E.D. Cal. July 1, 2025).

Under Mathews, the court considers three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.  Additionally, due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement."  Rodriguez Diaz, 53 F.4th at 1206.

With respect to the first factor, "an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.'"  Id. at 1207 (quoting Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011)).  As addressed above, petitioner has been detained for nearly

8

twelve months with no end currently in sight.  This factor therefore weighs in their favor.

The second factor, the risk of erroneous deprivation, also weighs in petitioner's favor.  Considering that petitioner has been provided no process, the risk of erroneous deprivation is high, particularly because respondents do not argue or present any evidence that petitioner presents a danger to the community or a flight risk.  See A.E., 2025 WL 1424382, at *5, 2025 U.S. Dist. LEXIS 94233, at *12 ("The risk of an erroneous deprivation of [a petitioner's] interest is high where [h]e has not received any bond or custody redetermination hearing[.]" (alterations in original) (citation and internal quotation marks omitted)); R.D.T.M. v. Wofford, No. 1:25-cv-1141 KES SKO, 2025 WL 2617255, at *6, 2025 U.S. Dist. LEXIS 176124, at *11 (E.D. Cal. Sept. 9, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." (alteration in original) (citations omitted)).  In fact, the government's own records indicate that petitioner has no known criminal record.  ECF No. 14-2 at 2.  As a result, the risk of erroneous deprivation weighs in petitioner's favor.

Finally, while the government has an interest in enforcing its immigration laws, its "interest in detaining petitioner without a hearing is 'low'" and custody hearings in immigration court "are routine and impose a 'minimal' cost."  R.T.D.M., 2025 WL 2617255, at *6, 2025 U.S. Dist. LEXIS 176124, at *11 (citing Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).  "Respondents offer no 'justifiabl[e] concern[]' that Congress might have sought to address by providing for [petitioner's] unbailable detention."  Rincon v. Hyde, No. 25-cv-12633 BEM, __ F. Supp. 3d __, 2025 WL 3122784, at *8, 2025 U.S. Dist. LEXIS 220058, at *17 (D. Mass. Nov. 7, 2025) (first two alterations in original) (discussing petitioner's detention under § 1225(b)(1)).

C.    Conclusion

For these reasons, the court finds that the government's interest in detaining petitioner without a hearing is low and does not outweigh petitioner's substantial liberty interest or the high risk of erroneous deprivation of liberty.  The undersigned therefore recommends that the petition for a writ of habeas corpus be granted and respondent be ordered to provide petitioner a bond

hearing before an immigration judge within seven days, at which the immigration judge must order petitioner released unless the immigration judge finds that petitioner is a risk of flight or danger to the community by clear and convincing evidence.  See Maksim v. Annex, No. 1:25-cv-0955 SKO, 2025 WL 2879328, at *6, 2025 U.S. Dist. LEXIS 200588, at *17 (E.D. Cal. Oct. 9, 2025) (adopting clear and convincing evidence burden in similar circumstance); Ohanyan v. Warden of Cal. City Det., No. 1:25-cv-1661 TLN SCR, 2026 WL 183743, at *7, 2026 U.S. Dist. LEXIS 12932, at *22 (E.D. Cal. Jan. 23, 2026) (recommending a bond hearing to an asylum seeker detained for over 14 months), adopted by 2026 WL 295550, 2026 U.S. Dist. LEXIS 23431 (E.D. Cal. Feb. 4, 2026).

## CONCLUSION

1.    Accordingly, IT IS HEREBY ORDERED that petitioner's motion for expedited relief (ECF No. 24) is GRANTED to the extent it is being recommended that their petition be granted.

IT IS FURTHER RECOMMENDED that:

2.   Respondents' motion to dismiss (ECF No. 14) be DENIED;

3.   Petitioner's application for a writ of habeas corpus (ECF No. 1) be GRANTED;

4.   Respondents be ordered to provide petitioner R.M., A-240-170-123, within seven days of the issuance of an order adopting these findings and recommendations, a bond hearing before an immigration judge at which the immigration judge must order petitioner released unless respondents prove by clear and convincing evidence that petitioner is a risk of flight or danger to the community;

5.   Respondents be further directed to file a notice certifying compliance with the above provision within three days from the date of the bond hearing;

6.   If petitioner is granted release on bond, respondents shall return all of petitioner's documents and possessions at the time of release; and

7.   Judgement be entered in petitioner's favor and this case closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within three days after being served with these findings and recommendations, any party may file written objections with

the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 26, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE